BREAUX, C. J.
This suit was instituted by .plaintiff against the defendant to set aside certain acts and transactions between them.
Twenty-five hundred dollars is the valuation placed by plaintiff on the property he sold to defendant, of which (he urged) the defendant is seeking to defraud him.
Por the purpose of deciding the issues, going back a few years prior to the last act (act of sale of 1898) between plaintiff and defendant, we take up the charge made by plaintiff against the defendant and his brother, Leopold: Tha.t at their instance a sale was passed in 1896 by him of this property to them for the sum of $400; that on the same day they sold back the property to him for the same amount, payable in credit installments, and took notes as representing the installments; that he never consented to sell this property, and that whatever Jie did was done in absolute error; that he was misled by the purchasers of his property, in whom he had implicit confidence; that he has no experience, cannot read or write, and the acts were never read or explained to him.
It appears that in the year 1897 his little crop proved a total failure. He became indebted in a small amount, to wit, the sum of $97.28.
Plaintiff avers, in substance, that on the 1st day of February, 1898, defendant proposed to pay this indebtedness, for which a judgment had been obtained by plaintiff’s creditor, which had been recorded in the mortgage book; that defendant’s influence lured him on to put his (plaintiff’s) property, consisting of 40 acres of land, two mules, two creole horses, one mare, and one cow and calf, in his name. He says that he was advised by defendant to take this step as a protection against creditors, if plaintiff should contract other debts; that there was no intention on his part to sell, and no intention on the part of defendant to buy, the property.
It appears that the amount of his indebtedness at this time — that is, February, 1898— had increased to the sum of $518.41.
Plaintiff alleged that this was not the correct amount; in fact, that he owed nothing at all. None the less it seems that he transferred the property as before mentioned. He claims to have since, not only paid, but overpaid, all of his indebtedness, and after the last payment he called on defendant for a cancellation of the mortgage; that is, for a cancellation of the sale, which he averred was a mortgage.
The defendant replied to this request for cancellation that he had changed his mind; that he would retain the place for his little son.
Plaintiff further charged that his title has *157 been slandered by defendant, for which he claims damages.
Defendant interposed an exception of no cause of action, which was overruled. He also pleaded the prescription of four years in bar of plaintiff’s demand. He filed an answer, setting up title and good faith, and averring the reality of the whole transaction.
It is in place to state that a large portion of the claim of defendant consisted of a note secured by a mortgage, executed in 1894, bought by him from the late Paul Gougenheim.
Upon the issues as thus made up the case was tried, and considerable evidence introduced by the respective parties.
There is testimony tending to prove that a portion of this small tract of land is low. It had little or no drainage in the year it was sold at the time it was sold.
The estimate of value of the property greatly varies.
We will not dwell upon the testimony regarding value, and set out in detail all of the facts to which witnesses have testified. Our decision on that point will take up space in inverse proportion to that taken up by the testimony. We will state, however, that the estimate of the value of the land varies from $10, and even less, to $40, an acre, and even over that amount.
The improvements on the place and movable property have no great value. It had less value than property of the kind usually has, according to some of the testimony.
Eleven hundred dollars as the value of the property in 1898, an estimate based on the testimony taken as a whole, would be an exceedingly fair valuation for plaintiff. We take that amount as a liberal estimate and decide the case on that basis.
Plaintiff, in order to recover back the property, denies the binding effect of all acts between him and the defendant. He even denied the allegations of his own petition, .and swore that he did not know of the amounts it sets forth. His own attorney took the-stand as a witness, and testified that he had specially instructed the plaintiff regarding these claims, and why he made the allegations, to which it does not seem that plaintiff objected at the time. But as a witness-in court plaintiff denied that he knew anything about the claims as set forth.
Among other acts in connection with the-claim which he no-w sets up, he executed a mortgage in favor of Paul Gougenheim, who-departed this life several years ago, and therefore could not be heard as to the validity of the claim.
Plaintiff emphatically declared that he-knew nothing of the act of mortgage and accompanying note, executed in favor of Gougenheim, although the act was passed by a well-known notary, who was dead at the time the suit was instituted. This note and mortgage passed into the hands of defendant, and it was in order to have the sale in question, made in 1898 to defendant, set aside, that' plaintiff undertook to question the validity of the note and mortgage on the ground that he knew nothing about them. Although' the correct amount of this note, secured by mortgage, was alleged in his petition, which his attorney took the pains to explain to-him, plaintiff would have it that it was not the correct amount; that the sum due by him was over one-half less than mentioned in the-deed.
Plaintiff has denied so many things under oath that we will not follow him much further. He seems to have no regard for records,, and less for those who make them or who are custodians of them. '
We will not have anything to say regarding officers who prepared the acts, or in regard to witnesses who signed deeds, to which he was a party.
The judge of the district court has written, an opinion and referred particularly to that phase of the case. The parties are well known to him. We will insert his opinion-
*159 We are slightly wearied of the review of testimony so unsatisfactory.
We take up the question of lesion, although the action was not directly brought by plaintiff against the defendant on the ground of .lesion.
The plaintiff made an absolute sale to defendant for the price before mentioned. He denies that he ever made or signed such ■a sale.
Manifestly, if the plaintiff be responsible for his acts, he is trifling with the truth. It is doubtless unfortunate for him that he lost his property; but he should not, for the sake of regaining it, be so unreasonable as to denounce every one who happens in any way to be connected with his acts. •
It remains that four years had elapsed from the date of the sale to the date suit was instituted. The right was barred by the pre•scription pleaded. We will not dwell upon that subject for the proposition is too elementary to admit of a moment’s discussion.
There is a serious ground of attack, if sustained by the weight of the testimony: that is, that the sale of 1898 was obtained without his consent and without his having signed it.
The testimony of plaintiff upon that subject is in direct contradiction of the testimony of a number of reputable witnesses, who were present at the time and testified most positively that full explanation was made to plaintiff before he signed any act. Some of these witnesses give reasons why they were at some pains to explain to him and satisfy themselves that the plaintiff understood fully the nature and extent of the acts he was about to sign.
He signed by making the mark which parties make when they are unable to write or read. There were witnesses to the signatures. The denial of his consent and of his having signed is refuted by the overwhelming preponderance of the testimony.
• In the next place, the plaintiff urged that he has not been ousted of his possession these many years, and that he still retains the right he had prior to the act of 1898.
The notarial deed of sale was in itself a delivery of the property, which plaintiff signed as vendor. Furthermore, plaintiff by written deed of lease, duly recorded, consented to become the lessee of the defendant for years, and afterward the property was leased by defendant to the son of plaintiff. This surely amounts to possession by the purchaser, unless it appears that the lease was a mere sham, a downright simulation, gotten up to divest plaintiff of his property.
1-Iis attack in this connection plaintiff has failed to sustain. True, he alleges that he did not consent to anything; but the testimony does not sustain that contention.
Counsel for defendant- was present when plaintiff agreed to the first lease in May.after the sale executed in the year 1898. He states as a witness:
“As to this lease, I will state positively that it was signed by Fontenette in my presence, after he had been told and had explained to him just what it was.” That his firm “is always careful, in dealing with negroes or ignorant persons, not only to read the act to them, but to specially inquire if they understand its meaning, and, if not, to explain its meaning before it is signed. * * * This we do because we are unwilling to be the active factors in any imposition or overreaching any ignorant people; * * * because we do not propose to be used as tools by any client to perpetrate a fraud.”
After having leased the property to plaintiff for several years, the defendant changed his lessee, and leased the property to the son of plaintiff. Under the different acts of lease the amount of rental mentioned in the contract was paid to defendant. Plaintiff asks to have that amount credited on the claim he sets up, and in that way he would remain owner of the property and free from his indebtedness. At this late date plaintiff, assisted to some extent by the testimony of his sons, wishes to treat as virtually null all that which he has done and to have the amount paid by him credited as shown by the evidence above mentioned.
*161 It was not shown that there was simulation. The most that can be said is that the price was inadequate.
The complaint is barred by the limitation of four years placed on such a claim; that is, having failed to institute suit in that time, it has barred all claims of which inadequacy of the price is the predicate.
Plaintiff argued that he had some homestead right.
This claim has no merit. He sold the property some months before the sale of 1898, and never acquired a right to the homestead on either of the Constitutions of 1879 or 1898.
In order to set aside the different acts as null, as having never been consented to, as never having been signed, we would have to decide that the testimony above quoted and other similar testimony should have no weight. This we will not do.
If a person, because he is unlettered, as this plaintiff is, can have all of his deed set aside, then that which has been said these many years will be entirely trué:
“It is bliss to be ignorant, and folly to be wise.”
There is a theory which explains the attacks of the old darky. He may have forgotten all of these acts. None the less he should be more conscious of his failing memory and less inclined to assail reputable testimony.
The judgment appealed from is therefore affirmed.